Joseph G. WARREN, Sr., Plaintiff, Appellant,

v.

CONFEDERATION LIFE ASSOCIATION, Defendant, Appellee.

No. 7129.

United States Court of Appeals First Circuit.

Oct. 11, 1968.

**488**

———◆———

Paul G. Holian, Cambridge, Mass., with whom Richard D. LeMay, Boston, Mass., was on brief, for appellant.

James C. Heigham, Boston, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Plaintiff, Warren, Sr., a citizen of Massachusetts, appeals from a judgment

n. o. v. for defendant Confederation Life Association, a Canadian corporation, in an action on a policy of life insurance in which plaintiff was named beneficiary. The policy was applied for in Massachusetts by Warren, Jr., hereafter Warren, by written application on May 5, 1966. Although frequently requested, the first premium was not paid until August 5. Subsequently the policy was issued on August 25, dated August 1.[1] Warren died on October 24, 1966. Defendant contended that the policy never took effect or, alternatively, was voidable for a misrepresentation which increased the risk as a matter of law. We do not reach the latter question.

The facts were essentially undisputed. Those presently relevant are as follows. We have italicized those which the defendant[2] knew when it issued the policy as a result of the applicant's own recital of his past history, and we have underlined additional facts it learned contemporaneously from a report furnished it by a Dr. Reusch, a physician who had treated Warren from 1963 to 1965. The rest it learned only after Warren's death.

*1963 (month unspecified) "Fainted twice—checkup * * * Dr. Drachman."*[3]

April 1963. In-patient for an illness that lasted three weeks. "vomiting after eating; blood pressure 140/85; abdominal discomfort and tenderness; rectal tender; remainder of PE neg." Diagnosis: "irritable bowel syndrome; nonspecific protitis." Treatment: "low residue diet; phenobarbital; murel."

---

1. The policy was delivered on September 8, but we consider August 5 (or, possibly, August 1, but the difference is immaterial) the presently significant date.

2. By this we include the soliciting agent and the examining doctor. Cf. Sullivan v. John Hancock Mut. Life Ins. Co., 1961, 342 Mass. 649, 174 N.E.2d 771; John Hancock Mut. Life Ins. Co. v. Schwarzer, 1968 Mass.A.S. 779, 237 N.E.2d 50.

3. Because this was Warren's answer to a question in the application, "Have you

had * * * Mental or nervous breakdown, convulsions, epilepsy, paralysis or other disorder of nervous system?" and Dr. Drachman treated plaintiff for convulsive disorder (in 1964) and epilepsy (in 1965), the plaintiff contends there was a disclosure of epilepsy. The short answer is that it was not. A misstatement does not cease to be such merely because the party who was misled might have discovered the truth, but did not—at least unless there was clear notice. As to notice in this case, see n. 8 infra.

January 1964. In-patient five days. "diarrhea and vomiting; blood pressure 140/90; in some distress secondary to abdominal discomfort." Diagnosis: "duodenitis, non-specific; irritable bowel syndrome." Treatment: "low residue diet."

May 1964. Consultation Dr. Drachman. Diagnosis: "Convulsive disorder,? post traumatic."

June 1964. In-patient, four days. Seizure disorder.

July and November 1964. Consultation Dr. Drachman.

August 1965. In-patient four days for an illness that lasted two weeks; "vomiting, epigastric and back pain; blood pressure 140/80; in some distress; PE neg." Diagnosis: "duodenitis." Treatment: "sippy diet;" var. medical drugs.

September 1965. Consultation Dr. Drachman. "clear-cut story of epileptic seizures."

September 1965. In-patient 4 days; seizure disorder.

November 1965. In-patient two days for ingestion of drugs.

March 1966. In-patient one day for ingestion of drugs.

May 1966. Application for insurance; examined by company physician.

June 1966. In-patient two days for "seizures."

June 1966. In-patient six days for seizure disorder.

July 1966. In-patient two days. Diagnosis of epilepsy; drug overdose.

July 1966. In-patient one day. Overdose of medications.

August 5, premium paid.

*The issue.* The application, which became part of the policy, provided, in part, as follows:

"The Applicant declares that the above answers are full and true and agrees that: * * * (2) any policy issued pursuant to this application will not take effect until the first premium has been paid and the policy has been delivered to the Applicant while the facts concerning the insurability of any person whose life is thereby insured are the same as described in this application; * * *."

Defendant contends that because, in the application, Warren stated that he was in "first class health and free from all symptoms of disease," and the above-quoted language established a condition precedent,[4] and as Warren was not in such health on August 5, the policy never took effect. Plaintiff counters that defendant knew Warren was not in first class health on May 5, and therefore waived the condition, or is estopped from relying on it.

Both parties overstate their position. Plaintiff is partially correct, but not sufficiently so.

The distinction between a misrepresentation in an application for life insurance, which may or may not be fatal,[5] and a condition precedent, where substantial truth is an absolute requirement, is one of long standing and is well recognized by the Massachusetts courts. See discussion in cases in preceding footnotes. It is founded not on semantics, but upon legitimate need. A life insurance policy is a unilateral contract—the applicant may pay the premium, or not, as he chooses; he is under no legal obligation to do so. If he does not tender the premium with the application but waits to decide later, what has occurred in the interval and known only to him may influence his decision. Persons with such

4. Defendant is correct that this is condition precedent language under Massachusetts law. Lee v. Prudential Life Ins. Co., 1909, 203 Mass. 299, 89 N.E. 529; Krause v. Equitable Life Ins. Co., 1955, 333 Mass. 200, 129 N.E.2d 617.

5. The misrepresentation must either be made with actual intent to deceive or must increase the risk of loss. Mass.Gen.Laws c. 175, § 186.

applications pending may be stimulated to pay and take the policy by discovering a subsequent deterioration in their health. This would result, in insurance language, in a "selection" against the company. In order to obviate such one-sidedness, insurance departments of the states regularly permit companies to use condition precedent provisions with respect to the interval between the submission of the application and the applicant's tender of the premium,[6] or the insurer's delivery of the policy.

■ Even condition precedent language, however, should be construed against the company, at least to the extent of not permitting it to rely upon the literal wording to achieve a result not disclosed. It may well be that the instant provision does not make the truthfulness of the statements in the original application a condition precedent; in other words, that the condition is limited to subsequent events.[7] This does not help the plaintiff. Secondly, there may be questions of waiver. But cf. Lopardi v. John Hancock Mut. Life Ins. Co., supra, n. 7. Even so we could not accept plaintiff's contention that because the company knew to some extent that the applicant was not in first class health it waived the provision in its entirety. The company cannot be regarded as waiving what it does not know. Cf. Niagara Fire Ins. Co. v. Lowell Trucking Corp., 1944, 316 Mass. 652, 56 N.E.2d 28. There can be no basis for the plaintiff to say that the company waived substantial circumstances of which it was ignorant.[8]

■ Alternatively, plaintiff claims waiver or estoppel because the soliciting agent did not read to the applicant the previously-quoted provision in the application as to conditions precedent, but read only some other parts. There was no suggestion that Warren could not read English, or was prevented from reading what was immediately above his signature, or that he did not in fact read it. Even if he had not read it, it was part of the contract delivered to him and which he accepted. Under ordinary contract principles he is bound in the absence of fraud or misrepresentation. The agent's testimony as to his practice of summarizing what was in the application as saying that it called for truthfulness was not evidence of misrepresentation. The reason for limited modification of these principles in the case of insurance policies adopted by the Massachusetts court in the cases cited in n. 2, supra, is lucidly explained in the opinions and is not applicable to the case at bar. Plaintiff's contention would unsettle the entire contract, in violation, *inter alia,* of the parol evidence rule. We find no support for it.

The judgment for the defendant is affirmed.

---

6. A similar situation applies with regard to lapsed policies and applications for reinstatement, a matter we need not presently pursue. See Bogosian v. New York Life Ins. Co., 1944, 315 Mass. 375, 53 N.E.2d 217.

7. We need not consider to what extent strong policy language (hence giving adequate notice to the applicant) may sustain a result more favorable to the company. But cf. Lopardi v. John Hancock Mut. Life Ins. Co., 1935, 289 Mass. 492, 194 N.E. 706; Charles, Henry & Crowley Co., Inc. v. Home Ins. Co., 1965, 349 Mass. 723, 212 N.E.2d 240.

8. Nor is there merit in plaintiff's suggestion that defendant was on notice and should have known the true circumstances. This was not a sound contention as of May 5, let alone on August 5. It is true that a doctor called by the plaintiff testified that the disclosures on Warren's May 5 application were sufficient to put defendant on inquiry as to his health. Defendant, however, did make reasonable inquiry. It consulted Dr. Reusch, whom Warren had identified as his personal physician. Dr. Reusch had not treated Warren for his seizures and knew nothing of Warren's epilepsy; hence defendant learned nothing thereof. But of more controlling importance, there was not even a semblance of notice as to the accelerated tempo of Warren's condition following the date of the application.