JAMES H. BOYLE & SON, INC. *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Suffolk. February 2, 1971. — April 6, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Insurance,* Life insurance: application, misrepresentation.

In an action on a life insurance policy alleged by the defendant insurer to be void by reason of false answers by the insured to questions in the application pertaining to a blood problem, evidence that the insured explained his "whole [blood] situation" to the insurer's examining physician and that to whatever precisely the insured said the physician replied "I wish you hadn't said it. I didn't hear it", required the judge to give the substance of instructions requested by the plaintiff beneficiary covering the situation where the insured gave correct oral answers to the physician but such answers were in-

correctly recorded on the application by the physician [195]; the judge's refusal to give the substance of the requested instructions was not cured by a charge not referring to the possibility of an erroneous recording of the insured's answers, and the plaintiff's exceptions to the refusal must be sustained. [196]

In an action on a life insurance policy alleged by the defendant insurer to be void by reason of false answers by the insured to questions in the application pertaining to treatment of him by a physician for any of the diseases enumerated therein, where the judge made it entirely clear that the issue was whether the insured knew or "believed that he was being treated" for any of such diseases, there was no error in a refusal by the judge to give in terms an instruction requested by the plaintiff beneficiary that questions in the application "required disclosure by . . . the [insured] of any treatment" for disease but did not require disclosure of "any consultation by . . . [him] of a physician for diagnostic purposes," since the substance of such instruction was included in the charge. [196]

CONTRACT. Writ in the Superior Court dated November 12, 1965.

The action was tried before *Goldberg, J.*

*Paul A. Carbone* for the plaintiff.

*Douglas G. Moxham* for the defendant.

CUTTER, J. The defendant (Prudential) as of March 21, 1963, issued to the plaintiff corporation (the beneficiary) an insurance policy on the life of John F. Boyle (Boyle). Boyle died on October 27, 1964, before the policy became incontestable. The beneficiary seeks to recover the face value of the policy. Prudential has tendered to the beneficiary the premiums paid upon the policy with interest, but denies other liability under the policy because of alleged misrepresentations made by Boyle in his application for the policy.

At the close of the evidence, the beneficiary filed requests for instructions numbered 6 and 7, set out in the margin.[1]

---

[1] These requests read: "6. Questions in the application pertaining to treatment by a physician of the insured [Boyle] for any of the enumerated diseases or disorders stated therein, required disclosure by . . . [Boyle] of any treatment of some illness, injury, or disorder, but not for [*sic*] consultation by . . . [him] of a physician for diagnostic purposes. . . . [Citing *Aetna Life Ins. Co.* v. *Hub Hosiery Mills*, 170 F. 2d 547 (1st Cir.).] 7. If the jury finds that . . . [Boyle] gave correct oral answers to the physician who examined him at the time . . . the application was signed and, further, that . . . [Boyle's] answers on the application were incorrectly recorded by the examining physician, then, as a matter of law . . . [Prudential] cannot rely on the falsity of any such answers on the application to avoid liability

These were refused by the trial judge subject to the beneficiary's exceptions. There was a verdict for Prudential. The case is before us on the beneficiary's outline bill of exceptions. S.J.C. Rule 1:22 (351 Mass. 742).[2]

Prudential at trial sought to show that Boyle, when examined for the policy (May 3, 1963, on an application of April 19, 1963) did not disclose that he suffered from hypertension (high blood pressure), alcoholism, polycythemia (an abnormal increase in red blood cells), and achalasia (a constriction of the lower esophagus). Dr. William T. Moriarty, who examined Boyle (in behalf of Prudential) in connection with his application for the policy, and recorded his answers, died before the trial. Boyle's own physician and family doctor, Dr. Thomas E. Chretien, gave extended testimony, based on careful notes, which warranted the jury in concluding that Boyle's answers to several questions about his medical history, as recorded by Dr. Moriarty, were false or only half truths (*Kannavos* v. *Annino*, 356 Mass. 42, 48) in significant respects. (a) It could have been found that Dr. Chretien had treated Boyle for achalasia in 1956 and 1960, whereas the answers on the application form revealed an esophagus operation in 1928 but did not mention the later treatment for achalasia. (b) Boyle is recorded on the application as never having been treated for a disorder of the blood vessels. Dr. Chretien testified that he prescribed withdrawal of Boyle's blood as treatment for polycythemia, from which Boyle was aware that he was suffering.[3]

---

under the policy which was issued. [Citing *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 652, and *John Hancock Mut. Life Ins. Co.* v. *Schwarzer*, 354 Mass. 327, 329.]"

[2] The beneficiary has not complied with S.J.C. Rule 1:22 (13) which requires that the "excepting party shall file with or as a part of his brief a record appendix reproducing such portions of the designated transcript as he deems necessary to his argument." This requirement is not satisfied by merely filing one copy of the complete transcript, particularly when it is a substantial one (here 249 pages). Failure to comply with the rule in this respect is ample ground for failure to receive the excepting party's brief or for striking it. See *Malden Equip. Corp.* v. *Malden Redevelopment Authy.* 353 Mass. 495, 497.

[3] Dr. Chretien also gave testimony which would have warranted the jury in concluding that Boyle did not make full disclosure to Dr. Moriarty, or on

Gabriel Bifano, treasurer of the beneficiary, testified (a) that he and Boyle (then president of the beneficiary) each simultaneously applied for a life insurance policy payable to the beneficiary, (b) that they appeared together before Dr. Moriarty for a medical examination, and (c) that Boyle and he were examined in each other's presence. Dr. Moriarty "rambled on with questions" and kept "checking stuff off" on the application for the policy. Boyle signed the form after the questions had been asked.

Bifano had previously testified that Boyle had told him (Bifano) "when the Red Cross wouldn't take . . . [Boyle's] blood any longer [because it wasn't useful for regular plasma], he went to the Protein Foundation" where he gave blood for "research purposes." How much of this was told to Dr. Moriarty is not clear. At one stage, Bifano testified that Boyle explained to Dr. Moriarty his "whole [blood] situation," but Bifano did not indicate with certainty just what was said to the doctor. To whatever was said, Dr. Moriarty then replied according to Bifano, "I wish you hadn't said it. I didn't hear it. . . . You're all right, just cut out the cigarettes. . . . There is nothing wrong with your blood that's serious."[4]

1. We need not discuss the substantial testimony by Dr. Chretien concerning Boyle's alleged alcoholism and hypertension (fn. 3), and the treatment of each of these disorders. Although Bifano heard no disclosures of these matters to

the application, in the following respects. (1) Dr. Chretien had diagnosed Boyle as suffering from alcoholism in 1956 and in 1959, and had treated Boyle for it between 1959 and 1961. He had been told by Boyle on April 11, 1960, that Boyle had been in the Washingtonian Home for six days for the treatment of alcoholism. Questions in the application concerning alcoholism were answered in the negative. (2) Dr. Chretien testified that he treated Boyle for high blood pressure on at least fourteen occasions between 1955 and 1961. Pertinent questions in the application were answered in the negative.

[4] Bifano did not hear Boyle tell Dr. Moriarty anything about answers to other questions except what was recorded on the application form. He heard no discussion between Boyle and Dr. Moriarty about alcoholism or about heart trouble, murmur, chest pain, high blood pressure, or abnormal pulse, or about pleurisy, asthma, chronic cough, or spitting of blood, except a caution by Dr. Moriarty to watch smoking. The pertinent application question about blood read, "Have you ever been treated by any physician . . . for or had any known indication of any . . . disorder of . . . a. heart, blood, or blood vessels?" to which the answer was "No."

359 Mass. 191                                                    195

James H. Boyle & Son, Inc. *v.* Prudential Ins. Co. of America.

Dr. Moriarty (fn. 4) and although it seems improbable that the jury failed to believe Dr. Chretien's testimony about those subjects, they were not required to do so. The jury could not reasonably have inferred from the disclosure of a 1928 esophagus operation on the application, or from Bifano's obscure testimony, that Boyle had said more about his achalasia than was recorded. Nevertheless, it is possible (even if improbable) that the jury did not believe Dr. Chretien's testimony about having treated Boyle for achalasia.

The jury could have believed, from Bifano's somewhat incoherent testimony, that Boyle made some disclosure to Dr. Moriarty about his blood, and perhaps could have inferred from the written answer that the disclosure was not recorded accurately by the doctor on the application form. Bifano's testimony about Dr. Moriarty's reply to Boyle's disclosure of some blood problem ("I wish you hadn't said it"), if believed, could be regarded as evidence of the doctor's failure or unwillingness to record the full import of whatever disclosure about blood Boyle may have made. We think it required the trial judge to give instructions containing the substance of, or making unnecessary, the requested instruction no. 7 (fn. 1). See *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass. 649, 652–654, where we said that it is "a question of fact for the jury whether truthful answers were given by the insured and improperly recorded by an agent of the" insurer, and that it "would be unfair to permit an insurance company to avoid a contract of insurance because of the failure of a company's own . . . examining physician correctly to record the answers given by an applicant." To make applicable the doctrine of the *Sullivan* case, however, the finder of the facts must conclude that the insured gave to the physician correct oral answers to all the questions and that they were wrongly recorded.

2. The trial judge charged, "[W]ere there misrepresentations in the application made by Boyle? Did he answer questions, and his answers were not true?" He referred to

the application form, pointed out the "yes" and "no" answers there recorded, and said, "those are the answers — were they misrepresentations? . . . [W]ere they true or were they not true? . . . [I]f there were no misrepresentations, of course there couldn't be anything that was wrong and your verdict would be for the plaintiff [the beneficiary] without any further consideration of the issues in the case."

If this charge had been limited to the *oral* answers made by Boyle to Dr. Moriarty, it would have made unnecessary further instructions based on the *Sullivan* case (342 Mass. 649), because the *written* answers then would have been immaterial. The judge, however, as we read the charge, made no direct reference to the possibility of erroneous recording (by Dr. Moriarty) of Boyle's answers, because he apparently thought no evidence required him to charge on this question. When his failure to give the substance of requested instruction no. 7 was called to his attention by the beneficiary's counsel, the judge replied, "There is no evidence in the case whatever that the doctor didn't put down what Boyle said." The evidence of any misrecording of the oral answers was not impressive. We cannot say, however, that Dr. Moriarty's alleged remark ("I wish you hadn't said it. I didn't hear it."), when Boyle made his statement about his blood problem (see question quoted, fn. 4), would not have permitted the jury to infer that Boyle's answer had not been fully and correctly recorded, if the jury believed Bifano's testimony about the doctor's remark and about Boyle's statements concerning his blood. The substance of instruction no. 7 should have been given.

3. A reading of the judge's charge as a whole satisfies us that he gave in substance requested instruction no. 6 concerning the difference between diagnosis and treatment, if indeed the evidence required any instruction on the point. The judge made it entirely clear that the issue was whether Boyle knew or "believe[d]" that he was being treated for any of these diseases set forth in the questions."

*Exceptions sustained.*