Joseph T. BOULEY, Plaintiff, Appellee,

v.

**CONTINENTAL CASUALTY COM-PANY, Defendant, Appellant.**

No. 71–1312.

United States Court of Appeals,
First Circuit.

Heard Jan. 3, 1972.

Decided Jan. 14, 1972.

Richard T. Linn, with whom Gunning, Lafazia, Guys & Salya, Providence, R. I., was on brief, for appellant.

David F. Sweeney, Warwick, R. I., with whom Breslin, Sweeney, Reilly & McDonald, Warwick, R. I., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE, Circuit Judge, and WYZANSKI, Senior District Judge.*

ALDRICH, Chief Judge.

Defendant, Continental Casualty Company, in 1962 issued a group accident and health policy to plaintiff Bouley's employer as "Holder," providing for various benefits, including monthly payments on account of total disability of the individual certificate holders, or insureds. In 1964 plaintiff applied to become an individual insured, and was accepted.[1] Thereafter, as a result of an accident in May 1967, plaintiff become

totally disabled, and has since so remained. After receipt of due notice and proof of claim, defendant made the monthly payments until December 1968, when it ceased, notifying the plaintiff that his certificate was revoked on account of misrepresentation in the application. Plaintiff brought suit in the district court. Defendant pleaded the misrepresentations. The jury found for the plaintiff, and defendant appeals.

The relevant questions in the application were the following.

"2. Are you now to the best of your knowledge and belief in good health and free from any physical impairment of disease? (Give details of all exceptions)." Answer, "Yes."

"3. What medical or surgical advice or treatment have you had in the past 10 years? (State ailment, dates, duration and results)." Answer, "Nun." [sic][2]

The master policy contained the following provision.

"ENTIRE CONTRACT; CHANGES. The policy, the application of the Holder, if any, and the individual applications, if any, of the Insureds constitute the entire contract between the parties, and any statements made by the Holders or by any Insureds shall, in the absence of fraud, be deemed a representation and not a warranty. No such statement shall void the insurance or reduce the benefits under the policy or be used in defense of a claim hereunder unless it is contained in a written application, nor shall any such statement of the Holder, except as fraudulent misstate-

---

* Sitting by designation.

1. Although this was a nonmedical policy, requiring no medical examination, the application did not contain the sometimes standard good health clause. *Cf.* Kelly v. John Hancock Mutual Life Ins. Co., 1944, 131 Conn. 106, 38 A.2d 176; Popowicz v. Metropolitan Life Ins. Co., 1932, 114 Conn. 333, 158 A. 885; Warren v. Confederation Life Ass'n, 1 Cir., 1968, 401 F.2d 487. It merely provided that the policy would not attach unless

the applicant was gainfully employed on the writing date. This condition was met.

2. Time was wasted during the trial as to the effect that this possible indication of illiteracy might or should have had upon the defendant. The answer is none. Russo v. Metropolitan Life Ins. Co., 1939, 125 Conn. 132, 137, 3 A.2d 844, 846–847; *cf.* Guariglia v. John Hancock Mutual Life Ins. Co., 1952, 139 Conn. 54, 57–59, 90 A.2d 162, 163–164.

ment, be used at all to void the policy after it has been in force for three years from the date of its issue. . . . "

It is agreed that the governing law is the law of Connecticut.

■ In spite of this plain language of the master policy the defendant, as evidenced by its comprehensive requests for instructions and its citations, fails to recognize the difference between misrepresentations and warranties. There is no warranty here, except the minor one mentioned in n. 1, ante. The burden was upon the defendant to show that the application contained a materially false representation, fraudulently, as distinguished from innocently, made. Variety Homes, Inc. v. Postal Life Ins. Co., 2 Cir., 1961, 287 F.2d 320, 321; *see* State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co., 1929, 109 Conn. 67, 71–73, 145 A. 565, 566–567; Guariglia v. John Hancock Mutual Life Ins. Co., ante n. 2. It is not clear from the part of the record that has been reproduced in the record appendix, and, accordingly, is that to which we refer, to what extent the representations in the application were false. The court did not put to the jury the issue of fraud. It charged that as matter of law the plaintiff "made a material misrepresentation . . . and that [he] knew that it was not true when he filed this application. So you do not concern yourself with that aspect at all."

■■ In point of fact a statement on an application might be knowingly untrue, but the matter might be so inconsequential that, in good faith, the applicant might reasonably have felt the discrepancy immaterial. State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co., ante, 109 Conn. at 71, 145 A. at 567. We cannot tell on the present record whether there should have been an issue of this sort in the case. Since we are ordering a new trial, we commend the matter to the court's attention.[3]

■ Again, on the evidentiary record before us, it cannot be told whether the matters concealed from the defendant by the erroneous answers on the application were material as matter of law, or whether there was an issue of fact. Many misrepresentations are material as a matter of law, but they cannot be such if the only ailments not mentioned were "of so slight and temporary a character" that the jury could reasonably find that the representations were "substantially," even if not "literally," true. *State Bank*, ante, at 71, 145 A. at 567; *see* Rogers v. Columbian Protective Ass'n, 1945, 132 Conn. 129, 43 A.2d 72. If in fact a misrepresentation was fraudulent, as above defined, and was material as a matter of law, that should have been the end of the case.[4] Instead, possibly misled by the defendant's pleadings, and its conduct during the trial in perhaps emphasizing reliance, as distinguished from materiality,[5]

3. The word fraudulent in this connection means lack of good faith. *Cf.* State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co., ante, at 71–73, 145 A. at 567. In view of the obvious self-interest of the applicant, both at the time, and in testifying, and the substantial dependence of the insurer upon the truth of the answers even when there is a medical examination, and its complete dependence when there is not, there should be a heavy burden upon an applicant to show that a knowingly false statement was nonetheless made in good faith. As the Court pointed out in Stipcich v. Metropolitan Life Ins. Co., 1928, 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895, the relationship

of the insured to the insurer is one in which entire good faith is of utmost importance. The argument made orally by plaintiff in this court that defendant routinely accepted the application and was evidently not concerned with the answers is probably the ultimate in absurdity.

4. Defendant did not move for a directed verdict, and so cannot be given judgment here even if we were so minded. Sears v. Pauly, 1 Cir., 1958, 261 F.2d 304.

5. One way, although not conclusive, to establish, if it was in a disputable area, that a misrepresentation was material, is to show what would have been the company's practice had the facts been truly stated.

the court charged the jury that there was a factual issue for it to resolve, namely, whether the defendant "re[lied] on the misrepresentation that was made by Mr. Bouley in the issuance of the policy?" It is true that the general law with respect to a fraudulent misrepresentation requires proof of reliance. With respect to insurance, however, the insurer presumptively relies upon the application and is misled by any material misrepresentation. *Guariglia*, ante, 139 Conn. at 55–57, 90 A.2d at 163; *State Bank*, ante, 109 Conn. at 70–71, 145 A. at 566–567; cf. *Russo*, ante, 125 Conn. at 134, 3 A.2d at 845. The only rebuttal to this presumption is proof that the insurer knew, or possibly, had reasonable grounds to know,[6] of the falsity, and therefore could be said not to have relied. Variety Homes, Inc. v. Postal Life Ins. Co., ante, 287 F.2d at 323. Absent such showing, the only issue, apart from the applicant's good faith, is whether the misrepresentation was a material one. This issue the court, as previously noted, charged the jury the defendant had conclusively established. No question of reliance remained.

■ We turn to the question of the defendant's saving its rights. We start with the general observation that the court's procedure was in direct violation of F.R.Civ.P. 51, which requires specific exceptions to be taken following the charge, not in advance.[7] Following the charge the defendant took no exceptions whatever. Immediately before the charge, however, in not too adequate form, it objected to the court's putting the issue of reliance to the jury. Any defect in form can be regarded as remedied by various, fully adequate (in this respect), requests to the refusal of which the court noted, although in a manner contrary to Rule 51, defendant's exceptions.

In Dunn v. St. Louis, San Francisco R. R. Co., n. 7, ante, the court stated that even though it disapproved of the practice, it would not say that an exception to a charge could never be reserved in advance, and that sometimes an appellate court should recognize one. We believe, under all the circumstances, this to be a case calling for such recognition.

The judgment of the district court is vacated, the verdict set aside, and a new trial ordered.

---

6. Cf. Columbian Nat. Life Ins. Co. of Boston, Mass. v. Rodgers, 10 Cir., 1940, 116 F.2d 705, cert. denied 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521, a case not dear to the writer of this opinion.

7. *See* Dunn v. St. Louis, San Francisco R.R. Co., 10 Cir., 1966, 370 F.2d 681, where the court elaborately set forth the reasons.