Anna E. SULLIVAN, Plaintiff-Appellee
and Cross-Appellant,

v.

The MANHATTAN LIFE INSURANCE
COMPANY OF NEW YORK, Defend-
ant-Appellant and Cross-Appellee.

Nos. 80–1078, 80–1102.

United States Court of Appeals,
First Circuit.

Argued May 7, 1980.

Decided Aug. 8, 1980.

H. Erik Lund, Boston, Mass., with whom Burns & Levinson, Boston, Mass., was on brief, for The Manhattan Life Ins. Co.

Ralph C. Copeland, Wellesley, Mass., with whom Randolph L. Smith and Baldwin, Copeland & Hession, Wellesley, Mass., were on brief, for Anna E. Sullivan.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and DAVIS,* Judge, U.S. Court of Claims.

DAVIS, Judge.

This insurance case pits plaintiff Anna E. Sullivan, beneficiary and widow of the insured, Thomas A. Sullivan, against the Manhattan Life Insurance Company of New York which refused to pay on the policy because it considers that Mr. Sullivan misrepresented his health in his application. Federal jurisdiction rests on diversity of citizenship. The case was tried to the judge on a combination of a stipulation of facts plus some trial evidence. The court made findings of fact which we accept in largest part, but we reject its ultimate conclusion that on those facts Mr. Sullivan did not misrepresent his freedom from diabetes.

## I.

Defendant insurance company issued a group insurance policy with several classes of insureds, the initial group becoming eligible for the insurance without showing evidence of insurability. This privilege was not accorded to certain later classes. Included in one of these later groups was Thomas A. Sullivan of Lawrence, Massachusetts, who was in the insurance and real estate business, together with his wife (the plaintiff), using for that purpose part of their two-family house. Mr. Sullivan applied for the insurance in August 1969 when visited in Lawrence and solicited by Donald Conboy, a member of a Boston agency representing Manhattan Life on this group in-

surance; Mr. Conboy was accompanied by Louis Lerner. At that time both Mr. and Mrs. Sullivan applied for a group life insurance policy and paid the semi-annual premiums. We are now concerned with Mr. Sullivan's policy because he died from diabetes less than a year later, within the policy's contestable period. When he signed the policy in August 1969 he suffered, and knew he suffered, from diabetes for about ten years (taking insulin daily), but Manhattan did not know that at the time or until after Mr. Sullivan's death.[1]

A main issue at the trial was whether Mr. Sullivan had misrepresented the state of his health with respect to diabetes. The application twice contained his signature. There were also three separate questions or statements on the application, relating to the applicant's health (including the distinct printed statement, "I have never had diabetes"), with the direction in each instance that if there were no exceptions the word "none" should be written. "None" was written after each of the questions. The District Court found on evidence (and we have no reason to disagree) that Mr. Sullivan had written his signature on the application but nothing else, that either Conboy or Lerner wrote "none" after Mr. Sullivan had signed in blank, that neither Conboy nor Lerner conversed with Sullivan concerning his health, and that Sullivan did not volunteer that he had or had not had diabetes.

On these facts the court held that Manhattan's agents had falsified the application by having Mr. Sullivan sign it in blank, without finding out anything about his connection with diabetes, and then completing the application by writing "none" and stating in effect that Sullivan did not have diabetes. Plaintiff was held entitled to recover because the misrepresentation was the company's own responsibility, not Sulli-

* Sitting by designation.

1. On receiving Mr. Sullivan's application, Manhattan found out that there was no information on him at the Medical Information Bureau, a service organization maintaining (for life insurance companies) centralized records on applicants for life insurance.

van's or the plaintiff-beneficiary's. These appeals followed.[2]

## II.

■ Despite the trial court's finding of the "hard" facts which we accept, we disagree with its conclusion that Mr. Sullivan made no misrepresentation. He appended his signature to a statement which expressly said: "To the best of my knowledge and belief * * * I have never had diabetes * * * except as here stated (if no exception, answer "none" otherwise give details)." At the time he signed, nothing appeared after this statement, but nevertheless he did not inform Conboy or Lerner about his diabetes and they had no reason to know he had it. Moreover, immediately above his signature (and following the three questions or statements) the application said: "I represent that, to the best of my knowledge, all statements and answers recorded on this application are true and complete * * *." Being in the insurance business himself, Mr. Sullivan had some general knowledge of the insurance forms and he must have known, or should have known, that he was agreeing incorrectly to a statement which specifically said that he did not have diabetes. The fact that he knew he had diabetes necessarily called for some explanation or observation on the application. But there is no evidence that he brought his diabetes or the matter of his health to the attention of the agents with whom he was dealing. Also, "[t]here was no suggestion that [he] could not read English, or was prevented from reading what was immediately above his signature, or that he did not in fact read it. Even if he had not read it, it was part of the contract delivered to him and which he accepted. Under ordinary contract principles, he is bound in the absence of fraud or misrepresentation." *Warren v. Confederation Life Ass'n*, 401 F.2d 487, 490 (1st Cir. 1968).

The law, we think, does not allow an insurance applicant of Mr. Sullivan's intelligence and experience deliberately, knowingly, or recklessly to leave entirely to the soliciting insurance agents the burden of affirmatively inquiring whether an express representation of the absence of diabetes, to which the applicant has appended his signature, is false or in need of explanation or modification. A substantial degree of good faith is owed by the insured (or applicant for insurance) to the insurer. *Bouley v. Continental Casualty Co.*, 454 F.2d 85, 87, n.3, 88 (1st Cir. 1972). When as here the applicant is quite aware that he has had long-standing diabetes, a serious ailment, and knows, or would know if he read the form, that without explanation his signature specifically represents that he has not had that particular medical problem, then it is part of his good faith obligation to alert the agents. As *Bouley* said, 454 F.2d at 87, n.3, it is "probably the ultimate in absurdity" to posit that the insurer routinely accepts the application without concern for the insured's answers to the health questions or statements—certainly those relating to serious illnesses expressly named in the application itself. *See Lennon v. John Hancock Mutual Life Ins. Co.*, 339 Mass. 37, 157 N.E.2d 518 (1959) (applicant bound to report post-application cancer operation which could be the time when he first obtained knowledge of his having that disease).

■ The misstatement as to the absence of diabetes was plainly important. Massachusetts law (G.L. c. 175, § 186) declares that a misrepresentation or warranty is material if the "matter misrepresented or made a warranty increased the risk of loss." The parties here stipulated, acceptably to the District Court, that the presence of diabetes increased the risk of loss to Manhattan; a false representation that the applicant never had diabetes also serves to increase the risk of loss; and the existence of Sullivan's diabetes, if known to Manhattan, would have influenced the judgment of Manhattan's underwriters in considering

---

2. The insurance company appeals from the award of the policy's $50,000 benefits to plaintiff Sullivan. The latter appeals from the District Court's failure to hold for her on alternative grounds she raised below.

this risk. This is an adequate material increase in risk, which is itself sufficient, if misrepresentation occurred, to predicate avoidance of the policy. *See Employers Liability Assurance Corp. v. Vella,* 366 Mass. 651, 655, 321 N.E.2d 910, 912–13 (1975); *Rappe v. Metropolitan Life Ins. Co.,* 322 Mass. 438, 440, 77 N.E.2d 641, 642 (1948); *Doulames v. Prudential Ins. Co.,* 1 Mass.App.Ct. 871, 872, 307 N.E.2d 17, 18 (1974).

The District Court felt that, because Conboy or Lerner wrote "none" after each specific statement (including "I have never had diabetes") subsequent to Sullivan's signing of the application, the case was kin to *Sullivan v. John Hancock Mutual Life Ins. Co.,* 342 Mass. 649, 174 N.E.2d 771 (1961), which held that an insurance company could not equitably avoid a policy where the insured signed the application in blank, gave truthful oral information to the examining physician, but the doctor incorrectly recorded answers. Even if we assume that that decision applies to the insurer's defense of increase in material risk under § 186, *supra,* it would not apply here where the applicant incorrectly signed a blank stating "I have never had diabetes," and told the company's agents nothing about his knowingly having that ailment. The core of *Sullivan* and its successors (*John Hancock Mutual Life Ins. Co. v. Schwarzer,* 354 Mass. 327, 328–30, 237 N.E.2d 50, 52–53; *James H. Boyle & Son v. Prudential Life Ins. Co. of America,* 359 Mass. 191, 195, 268 N.E.2d 651, 653 (1971)) is that the finder of the facts must conclude that the insured gave the physician or other agent correct oral answers to the questions and that they were wrongly recorded. *James H. Boyle & Son, ibid.* That was not and could not be found here. Mr. Sullivan not only signed the blank form containing the distinct representation that he had never had diabetes, but said nothing to the contrary to the agents of appellant.

### III.

For these reasons the judgment below cannot stand on the ground on which the District Court put it. Mr. Sullivan did in fact make a material misrepresentation which increased the company's risk of loss. But plaintiff Mrs. Sullivan has proffered several other reasons why she can still recover the insurance proceeds from Manhattan. The court below rejected one of these bases and left the others wholly untouched. We affirm the one decision the District Court made and remand the rest for consideration.

■ There was a claim by plaintiff of unfair discrimination contrary to Mass.G.L. c. 175, §§ 120, 138, in that, unlike the initial group of policyholders, Mr. Sullivan's later group was required to show evidence of insurability. The trial judge found no invidious or illegal discrimination. He rested on the uncontradicted testimony of Franklin Maisano, Manhattan's president, who explained that (1) the groups which did not have to show insurability were either the base class whose mortality rate was relatively predictable and constant or a later member class already covered by a different Manhattan policy who had gone through the same underwriting considerations, and (2) Mr. Sullivan came considerably thereafter in a different class of employees of new individual contributing firms. Plaintiff concedes that this was a rational explanation from an underwriting and legal point of view, and we uphold the District Court. The Massachusetts insurance statute does not forbid differences of treatment which are rational, and neither unfair, invidious, or illegal.

The District Court did not consider the other points now made by plaintiff—alleged failure to make a valid tender; the impact of Mass.G.L. c. 175, § 133; the applicability of the incontestability clause—and we remand them for the District Court's determination. It is preferable for that court to consider these problems initially than for this court to grapple with them on appeal for the first time.

The holding that plaintiff's decedent made no misrepresentation is reversed, the finding of no invalid discrimination is affirmed, and the case is remanded to deter-

mine whether there are other grounds on which plaintiff can prevail.

*So ordered.*