## Marie L. Guerrier *vs.* Commerce Insurance Company & another.[1]

No. 05-P-606.

Suffolk. February 7, 2006. - May 25, 2006.

Present: Duffly, Brown, & Katzmann, JJ.

*Insurance,* Motor vehicle insurance, Contract to obtain insurance, Misrepresentation, Agent. *Contract,* Insurance, Misrepresentation.

In an insurance coverage dispute, the evidence more than sufficiently supported the trial judge's findings that an insured had signed a blank application for an automobile insurance policy and had provided truthful information to an insurer's agent who, in turn, by design or negligence, recorded incorrect information on the application form; thus, the insurer was bound by its agent and was not permitted by law to avoid the policy. [356-359]

Civil action commenced in the Boston Municipal Court Department on November 10, 1999.

The case was heard by *Dermot Meagher,* J.

*Daniel A. Capodilupo* (*Michael C. Najjar* with him) for the plaintiff.

*Bruce Medoff* for Commerce Insurance Company.

Brown, J. A dispute between an insurer and its insured presents a fundamental question whether inaccurate information recorded on a written application for an automobile insurance policy constituted a material misrepresentation, and if so, whether the same was attributable to the insured, or on the other hand, to an agent of the insurer.

In August of 1999, Marie L. Guerrier made claim on her automobile insurance policy after her Toyota sedan was stolen. Commerce Insurance Company (Commerce), the insurer of her vehicle, had issued the policy on the basis of a written application form and other related documents, all of which had been

---

[1]Christopher Kokoras Insurance Agency, Inc.

signed in blank by Guerrier and thereafter filled out by the Christopher Kokoras Insurance Agency, Inc. (Kokoras), which originates business for Commerce. After an investigation, Commerce refused coverage, asserting Guerrier had (in its view) falsely indicated she had been previously licensed to drive in her native home of Haiti when she made application to Commerce for a Massachusetts motor vehicle insurance policy in 1996. Guerrier denied having made any such statement to Kokoras or Commerce.

Ultimately, Guerrier filed an action in the Boston Municipal Court against Commerce and Kokoras, pressing contract and tort claims related to the denial of coverage. After a jury-waived trial, the judge made written findings of fact, and judgment entered in Guerrier's favor, awarding damages.[2] Commerce appealed to the Appellate Division of the Boston Municipal Court, which reversed the trial court's judgment. The Appellate Division concluded that statements in the insurance application, which incorrectly indicated Guerrier as having had a prior driver's license, were "material" misrepresentations, the effect of which was to provide a permissible basis for Commerce to void the policy pursuant to G. L. c. 175, § 186.[3]

We reverse the decision rendered by the Appellate Division and reinstate the judgment entered by the trial court in favor of Guerrier. In doing so, we expressly rely on a settled rule of insurance law in this Commonwealth: where an insured has signed an application in blank and provided truthful information to an insurer's agent who, in turn, whether by design or negligence, recorded incorrect information on the application

---

[2]The amended complaint contained multiple counts against both defendants, many of which were dismissed prior to trial. There is no issue before us regarding any of the dismissed counts. The judge also dismissed all the third-party claims pressed by and between Commerce and Kokoras. Kokoras appears nominally as a party in the appeal before this court. Commerce does not raise any claim of error before us as to the disposition of the third-party claims.

[3]Section 186 of G. L. c. 175 states: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

forms, the insurer (who is bound by its agent) is not permitted by law to avoid the policy.[4]

1. *Background.* We set forth the facts found by the trial judge, with some amplification from aspects of the trial record that are not otherwise disputed by the parties.

On November 15, 1996, Guerrier, with her husband, went to the Kokoras office in Allston to purchase automobile insurance for her 1988 Toyota vehicle. The agent gave Guerrier a "sheaf" of documents to sign. Guerrier did so, in blank, without reading any of the documents. Kokoras was an agent of Commerce. Kokoras solicited business for Commerce, including policies that issued (as here to Guerrier) under G. L. c. 175, § 113H, which provides a means by which automobile insurance may be provided to persons who might not otherwise be eligible for such coverage.[5] See *Hanover Ins. Co.* v. *Commissioner of Ins.,* 443 Mass. 47, 48 (2004); *Trust Ins. Co.* v. *Commonwealth Auto. Reinsurers,* 46 Mass. App. Ct. 657, 658-659 (1999). Kokoras's office understood Guerrier was a candidate for purchasing motor vehicle insurance under § 113H's regulatory scheme, and it processed her application materials on behalf of Commerce.

a. *Application.* One part of Commerce's application form, labeled as "Driver Information," asked an applicant to list those persons who may operate the insured vehicle (and to identify the date of birth for each such person). Guerrier was the only named operator; her birthdate was noted ("9-21-49"). Immediately next to an entry recording her Massachusetts driver's

---

[4]The rule, as laid down by the Supreme Judicial Court in *Sullivan* v. *John Hancock Mut. Life Ins. Co.,* 342 Mass. 649, 654-655 (1961), and *John Hancock Mut. Life Ins. Co.* v. *Schwarzer,* 354 Mass. 327, 329-331 (1968), is understood to be the prevailing view nationally. See *Sullivan* v. *Manhattan Life Ins. Co. of N.Y.,* 626 F.2d 1080, 1083 (1st Cir. 1980); *Fay* v. *Aetna Life Ins. & Annuity Co.,* 307 F. Supp. 2d 284, 292 n.22 (D. Mass. 2004), and our discussion *infra* at part 2 of this opinion.

[5]Kokoras is a so-called "exclusive representative producer" assigned to Commerce (as agent) by the Commonwealth Automobile Reinsurers (CAR). An agency agreement, executed by Kokoras and Commerce on December 17, 1991, with attachments, is contained in this record. "Agents and brokers who have no insurance company that will voluntarily associate with them — because their books of business are too likely to result in financial loss — can apply to CAR for appointment to an involuntary relationship with an insurance company." *Trust Ins. Co.* v. *Commissioner of Ins.* (No. 2), 48 Mass. App. Ct. 628, 629 (2000).

license number, there appears the entry: "9-21-49 Haiti"; that entry (appearing under a column "Other") was responsive to a query as to where and when a named operator was first licensed to drive ("DATE FIRST LICENSED 9-21-49 Haiti" entry). This entry (and all other entries on the application form) were recorded by a Kokoras agent who met with Guerrier during this process.[6] Guerrier's signature appears at the very bottom of this same page.[7]

On the reverse side of the page just described, there is a declaration section for an applicant and agent to confirm that all statements set forth in the application were true and complete to the best of their knowledge. Guerrier's signature appears in this section as does that of the agent for Kokoras, both dated November 15, 1996.

In addition, Kokoras presented another form — "Out of State Driving Experience Application for Credit" — to Guerrier for her signature. This document contains the entry: "Marie L. Guerrier, Haiti Doesn't Remember license number," handwritten in a section of the document that calls for identifying the operator's name and previous out-of-State license number.[8]

Kokoras sent the completed application forms to Commerce, which then issued a standard Massachusetts automobile insur-

---

[6] As the trial judge observed, the entry — "9-21-49 Haiti" — was inaccurate because that was Guerrier's date of birth, and could obviously not be the date when she was first licensed to drive. An underwriter for Commerce identified the mistake.

[7] Guerrier never read the application, nor did the Kokoras agent read the particulars to her.

[8] Another form signed by Guerrier on November 15, 1996, indicates: (1) that a representative of Kokoras has explained to the applicant "all twelve options of insurance coverage in a way that I can understand"; (2) that the applicant has "chosen the options and amounts of coverage" and understands that she "can change" the coverage at any time; and (3) that the representative of Kokoras has given a copy of the application to the applicant who "can make changes at any time." Other documents signed by Guerrier and the representative of Kokoras for the purpose of applying for and purchasing motor vehicle insurance are in the record but need not be mentioned for purposes of this appeal. Documents later-in-time, signed by Guerrier on "1-29-99," also appear in the record. No notation appears on the 1999 forms that suggest in any way that Guerrier had been first licensed to drive in Haiti (or elsewhere).

ance policy to Guerrier. In the process of doing so, Commerce became aware of the discrepancy in the application — "9-21-49" was listed as being Guerrier's birth date as well as the date on which she was first licensed to drive in Haiti. Commerce approved the application form and returned it to Kokoras after amending it to add a particular notation — "9/21/66" — which was Guerrier's seventeenth birthday. The trial judge found that date was significant to Commerce because seventeen is the age at which she would have been eligible to obtain a driver's license in the Commonwealth. Commerce made nothing else of the discrepancy in dates on the application materials.

At all times, Guerrier made timely premium payments for the policy of insurance, which, as issued by Commerce, encompassed optional coverage for theft.[9]

b. *Loss.* On August 13, 1999, Guerrier notified the Boston police and Commerce that her vehicle had been stolen during the prior evening (August 12). Subsequently, the car was recovered and Guerrier made claim for property damage and related expenses. After an investigation, Commerce asserted that Guerrier had made a misrepresentation in her application, and denied the claim.[10]

The crux of the case, as tried, was whether the falsity of the representation as to a prior driver's license in Haiti derived from statements made by Guerrier, or stemmed from an inaccurate entry made by Kokoras in completing the application forms. None of the parties attacked the authenticity of any of the documents admitted in evidence.

The trial judge concluded it would be unjust for Commerce to avoid the policy, given that any error as to Guerrier's prior driver's license was made by Kokoras. The judge determined it had not been shown that "Guerrier [was] responsible for the assertion of a previous license in Haiti." The judge pointed out that Commerce, in its underwriting process, had identified the obvious error for the "DATE FIRST LICENSED 9-21-49 Haiti"

---

[9]Commerce had classified Guerrier as an experienced driver under the age of sixty-five, which allowed her to receive a $466 annual credit toward the premium.

[10]Facts surrounding the theft and Guerrier's related out-of-pocket loss were not challenged by Commerce at trial.

entry, but that it did nothing to look into the matter; rather, Commerce chose to amend the application by unilaterally adding "9/21/66" to the form, which evidently reflects the date when Guerrier might have first obtained a license in Massachusetts.[11] (Apparently, she had in fact obtained a license within the Commonwealth in 1994, a point noted in the Appellate Division decision.) The judge ordered a judgment to enter in favor of Guerrier against Commerce on claims for breach of contract and violation of the implied covenant of good faith and fair dealing. Damages were awarded in the amount of $3,228.56, which included statutory interest. The judge also determined Commerce had violated G. L. c. 93A, as had been alleged, and awarded double damages in the sum of $2,312.99, attorney's fees in the amount of $25,000, and costs in the amount of $151.

In a written opinion, a panel of the Appellate Division of the District Court reversed the judgment in favor of Guerrier. The Appellate Division ruled, in light of certain "undisputed facts," that "Commerce met its burden in showing that a material misrepresentation was made on [the] application and was entitled to void the policy." The Appellate Division vacated the award under G. L. c. 93A, and based on its disposition of the appeal, saw no reason to address the third-party claims between Commerce and Kokoras. See note 2, *supra*.[12]

2. *Discussion.* We concur with the trial judge's ultimate finding that fault for the falsity of certain statements contained in the application rested solely with Kokoras, Commerce's agent. The judge's findings are well-supported by the evidence, and

---

[11]To the extent that the judge determined that the false statement, that Guerrier was previously licensed to drive in Haiti, did not increase a "risk" to the insurer that the vehicle would be stolen, the judge erred. In the context of G. L. c. 175, § 186, the statutory language — "risk of loss" — is not limited to the character of the actual loss but instead refers generally to any fact, "the knowledge or ignorance of which would . . . influence the judgment of the . . . underwriter in fixing the rate of the premium." *Barnstable County Ins. Co.* v. *Gale*, 425 Mass. 126, 128 (1997), quoting from *Employers' Liab. Assur. Corp.* v. *Vella*, 366 Mass. 651, 655 (1975). See *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *AIM Ins. Agency*, 55 Mass. App. Ct. 715, 722 (2002).

[12]Though it had appealed from the trial court's judgment, apparently Kokoras elected not to prosecute its appeal before the Appellate Division. Kokoras did not file a brief or offer any argument before this court.

cannot reasonably be said to be clearly erroneous. Mass.R. Civ.P. 52, as amended, 423 Mass. 1402 (1996). It was error for the panel of the Appellate Division, which plainly took a different view of the evidence, to engage in new fact finding at odds with the judge's detailed and supportable findings.[13]

Simply put, the judge plainly accepted the trial testimony of Guerrier, who stated unequivocally that all she did was to sign blank pages of the application, relying on oral assurances of Kokoras to the effect that "everything was fine" and that Kokoras would correctly complete the necessary forms for obtaining the insurance. The judge's express and implicit findings to this effect are more than sufficiently supported by evidence admitted at trial. The narrow but crucial point as to who was the source for the incorrect entries was a question of fact for the trial judge to resolve, and not the Appellate Division on the basis of a documentary record. *Sullivan* v. *John Hancock Mut. Life Ins. Co.*, 342 Mass. 649, 654 (1961) ("question of fact for the jury whether truthful answers were given by the insured and improperly recorded by an agent of the" insurer). *James H. Boyle & Son, Inc.* v. *Prudential Ins. Co. of America*, 359 Mass. 191, 195 (1971) (same). Based on his findings, the judge rightly concluded it would be improper to permit Commerce to void the policy given that it must be bound by the actions of its agent, Kokoras, whose failings are imputed derivatively (by law) to Commerce. The rule of law derives from the Supreme Judicial Court's opinions in *Sullivan* v. *John Hancock Mut.*

---

[13]In casting aside the judge's findings, the panel essentially engaged in a de novo review of the evidence and made credibility determinations, which in some material respects were inconsistent with express findings of the judge. For example, the panel found as fact that Kokoras had "advised" Guerrier that if Guerrier were an experienced driver, she would receive a discount in her insurance premium. While the panel was technically correct in characterizing the statements in the application as being "representations" of the applicant, the panel ignored (or gave short shrift to) the fact, as found by the judge, that Guerrier signed a blank application and related forms, and that it had been a Kokoras representative who had actually set down the entries on the application. The panel did not address the question whether actions of Kokoras, as agent for Commerce, had the effect of foreclosing Commerce's effort to void the policy on grounds relating to G. L. c. 175, § 186, a conclusion which follows ineluctably from the trial judge's findings and related rulings. Commerce conceded (in argument before us) that the panel of the Appellate Division had overstepped, in at least one instance, in finding new facts.

*Life Ins. Co., supra,* and *John Hancock Mut. Life Ins. Co.* v. *Schwarzer,* 354 Mass. 327, 329-331 (1968), see note 4, *supra,* which the parties do not mention in their briefs.[14]

In *Sullivan* v. *John Hancock Mut. Life Ins. Co.,* 342 Mass. at 651-652, the Supreme Judicial Court ruled an insurer was not permitted to declare a policy void and decline coverage where an insured had signed an application for insurance in blank and given truthful answers to an examining physician (agent for insurer), but the physician had recorded incorrect answers in the application.

Similarly, in *John Hancock Mut. Life Ins. Co.* v. *Schwarzer,* 354 Mass. at 328, the insurer's soliciting agent had received truthful information from an insured, but filled out the application incorrectly, and failed to ask the insured to read it before signing. The insurer sought to have declared void the policy it had issued to its insured. The trial judge found that the insurer's soliciting agent "was responsible for the false statements, and that they were due to no fault of" the insured. *Ibid.* In upholding the trial court's decision in favor of the insured, the Supreme Judicial Court relied on the *Sullivan* decision, reiterating "the rule that when the applicant gives correct oral answers which are incorrectly recorded by an authorized agent . . . the insurer cannot rely on the falsity of such answers to avoid the policy." *Id.* at 329.

Here, as in the *Sullivan* and *Schwarzer* decisions, the judge found that Guerrier was not responsible in any respect for the erroneous information that had been entered on her application by Kokoras. The *Sullivan/Schwarzer* rule, therefore, applies and forecloses the claim advanced by Commerce that it might avoid the policy on the basis of the alleged misrepresentations, for which Kokoras was responsible. It is no answer to say, as Commerce does, that Guerrier must be bound nevertheless to answers in her application, whether or not she read the document. This

---

[14]Commerce does, however, cite two opinions of the United States Court of Appeals for the First Circuit: *Warren* v. *Confederation Life Assn.,* 401 F.2d 487 (1st Cir. 1968), and *Sullivan* v. *Manhattan Life Ins. Co. of New York,* 626 F.2d 1080 (1st Cir. 1980). Both refer to the Supreme Judicial Court's *Sullivan* and *Schwarzer* decisions, and in particular, the First Circuit's *Manhattan Life* decision, *supra* at 1082, has an extended discussion of the rule of law involved here.

very same contention was also raised by the insurer in *Schwarzer*, but the Supreme Judicial Court rejected it, explaining, "notwithstanding the general contract rule, the particular conduct giving rise to the estoppel may be such as to excuse the reading of the policy."[15] *John Hancock Mut. Life Ins. Co.* v. *Schwarzer*, 354 Mass. at 330.

The Supreme Judicial Court acknowledged "that the limitation here applied upon the rule that one accepting a contract is bound by all its terms, in alleviating the overreaching of applicants, also risks fraudulent imposition by applicants upon insurers." *Id.* at 331. The court concluded, however, that the "control" "of this sort of imposition, either on the applicant or the insurer, lies to a substantial extent within the insurer's power in the modification of procedures for obtaining and submitting applications." *Ibid.* The same holds true in the present situation. Since the elements of an equitable estoppel have been made to appear from the findings of the judge, we are obliged to reverse the Appellate Division's decision and to reinstate the judgment of the trial court.[16]

*So ordered.*

---

[15]"Underlying these holdings [in cases where the general rule gives way because the elements of equitable estoppel are present] is a recognition of the everyday practice of the purchaser of insurance. He seldom reads the policy and application, either because he cannot understand its detailed and technical terms, or because of a failure to realize its importance. He is merely interested in buying 'protection,' and he tends to rely on the good faith and skill of the insurer's agent, who is presumably an expert in such matters." *John Hancock Mut. Life Ins. Co.* v. *Schwarzer*, 354 Mass. at 330 n.3, quoting from Knopf, Insurance: N.Y. Insurance Law § 58: Effect of Insured's Failure to Read Application, 16 Cornell L.Q. 235, 238-240 (1930-1931).

[16]The parties' briefs sharply diverge on the question whether liability ought to have been imposed under G. L. c. 93A. We think it is enough to say that, given Commerce's awareness of the discrepancy behind the entry "9-21-49" on the "DATE FIRST LICENSED" section of the application; the fact that a reasonable investigation by Commerce would likely have disclosed the source of the error to be its own agent; and the aggressive litigation tactics employed by Commerce in a dispute where liability was more than reasonably clear because all the challenged conduct (as to the alleged misrepresentation) was attributable solely to its own agent, the judge did not abuse his discretion or err as matter of law in finding a violation of the statute.