Gus A. BENNETT, Plaintiff-Appellant,

v.

MUTUAL of OMAHA INSURANCE COMPANY, Defendant-Appellee.

Gus A. BENNETT, Plaintiff-Appellee,

v.

MUTUAL of OMAHA INSURANCE, Defendant-Appellant.

Nos. 91–7870, 92–6020.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1992.

Dewayne N. Morris, Morris & Holmes, P.C., Birmingham, Ala., for Bennett.

Braxton Schell, Jr., Bradley Arant Rose & White, Birmingham, Ala., for Mutual of Omaha Ins.

Before ANDERSON, Circuit Judge, HILL and ESCHBACH *, Senior Circuit Judges.

ANDERSON, Circuit Judge:

Appellant, Gus A. Bennett, appeals from the district court's entry of summary judgment against him on his claim of bad faith refusal to pay his direct insurance claim. Cross-appellant, Mutual of Omaha (Mutual), appeals from the district court's denial of its motion for summary judgment on Bennett's breach of contract claim. For the reasons that follow, we affirm each of the district court's orders.

## I. BACKGROUND

### A. The Relevant Facts

Gus Bennett owns and works in a cafe in Birmingham, Alabama. Following robberies in 1986 and 1987, he began suffering from nausea and abdominal pain. In July, 1987, Bennett sought treatment at the Norwood Clinic and Family Practice Center. He first saw Dr. Walter Wilson, who administered various stress tests, prescribed a heart medication, and referred Bennett to Dr. Michael Simpson, a cardiologist. Dr. Simpson's records indicate that Bennett was having chest pains, although there was no definitive diagnosis of heart disease.

In January, 1988, Bennett applied for a disability insurance policy from Mutual. On that application, Bennett disclosed that he had been treated for a peptic ulcer in 1976 and that he had received an annual physical examination in July, 1987, at the Norwood Clinic, with "no adverse findings." In June, 1988, Bennett obtained a hospitalization policy from Mutual, which he allowed to lapse in December, 1989.[1] In March, 1990, Bennett took out the health insurance policy at issue in this case. Bennett stated that he had not had any medical

conditions in the past ten years, and that he had not sought or received any medical advice or treatment in the past five years. After receiving acceptable results on a paramedical exam, Bennett was issued a major medical policy.

In May, 1990, Bennett had a heart attack and heart bypass surgery. After discovering indications that Bennett had been treated by a cardiologist for chest pains in 1987, Mutual denied his claim for benefits by letter in February, 1991.

### B. Proceedings Below

Bennett filed this lawsuit on March 12, 1991, alleging bad faith refusal to pay the insurance claim and breach of the insurance contract. On Mutual's motion for summary judgment, the district court granted the motion as to the bad faith claim, but denied it as to the breach of contract claim. With respect to the grant of summary judgment on the bad faith claim, the district court issued a Fed. R.Civ.P. 54(b) certificate, and Bennett appealed. Pursuant to 28 U.S.C. § 1292, Mutual filed and the district court granted a motion to certify its appeal of the denial of summary judgment on the breach of contract claim. This court entered an order permitting Mutual's appeal and consolidating the two appeals.

## II. DISCUSSION

We readily conclude that Bennett's bad faith claim is without merit and warrants no discussion. The only remaining issue is whether the district court erred by denying Mutual's motion for summary judgment on the breach of contract claim.

Ala.Code § 27–14–7 (1975) provides in pertinent part:

(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrep-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Neither of these policies is involved in the present lawsuit; Mutual has made all payments due under the disability policy.

resentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) fraudulent;

(2) material either to the acceptance of the risk or to the hazard assumed by the insurer;

(3) the insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Mutual could avoid liability if Bennett had made a material misrepresentation on his policy application, even if the misrepresentation was unintentional. The district court held that a misrepresentation had occurred, but that genuine issues of material fact existed as to whether the misrepresentation was material or would have caused Mutual, in good faith, to refuse coverage had the truth been known.

█ In Alabama, the materiality of a misrepresentation is generally a jury question. *State Farm Insurance Co. v. Whiddon*, 515 So.2d 1266 (Ala.Civ.App.1987), *Federal Kemper Life Assurance Co. v. First National Bank*, 712 F.2d 459, 462 (11th Cir.1983). Alabama courts do take judicial notice that certain conditions are commonly known to be life threatening; their existence is material as a matter of law. *See New York Life Insurance Co. v. Zivitz*, 243 Ala. 379, 10 So.2d 276, 283 (1942) (tuberculosis, cancer, and Hodgkin's disease increase risk to insurance company as a matter of law). "Alabama courts have been reluctant, however, to create broad categories of maladies that increase insurance risk as a matter of law and thus that remove the risk of loss issue from the province of the jury." *Federal Kemper*, 712 F.2d at 463. In particular, "[t]he Alabama courts 'have not yet held that every

coronary occlusion increases the risk of loss to the insurance company as a matter of law. Until Alabama so declares the matter is inherently one of medical fact. As such it [is] properly one for the jury.' " *Id.* at 464, quoting *Prudential Insurance Co. v. Gourley*, 267 F.2d 156, 163 (5th Cir.1959). *But see Richerzhagen v. National Home Life Assurance Co.*, 523 So.2d 344, 347 (Ala.1988) (when doctor testified that hypertension would have affected insured's life expectancy, underwriter testified that policy would not have been issued without more information, and beneficiary presented no contrary evidence, facts as to materiality of hypertension are undisputed and the question need not be submitted to the jury).

█ Mutual presented the deposition testimony of Joe Thompson, a claims analyst for the company. Thompson testified that a member of the underwriting department, upon examining the complete medical history in Bennett's claim file, stated that had Bennett's complete medical history been available to Mutual, the policy would have been issued with a disease elimination for heart disease, coronary artery disease, disorder of the stomach or peptic ulcer or phlebitis, thrombosis, or varicose veins. Bennett has not submitted any evidence to rebut Mutual's employee's testimony. However, we note that under Alabama law, the uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive. *State Farm General Insurance Co. v. Oliver*, 658 F.Supp. 1546 (N.D.Ala.1987), *aff'd.*, 854 F.2d 416 (11th Cir.1988). This case is distinguishable from *Richerzhagen v. National Home Life Assurance Co., supra*. In *Richerzhagen*, the insurance company presented the unrebutted trial testimony of a doctor in addition to that of its own underwriter. In this case, we think that a jury would be entitled to disbelieve the unsupported testimony of Mutual's underwriter that Bennett's medical history would have caused the company not to insure him for heart problems.

Accordingly, the judgment of the district court in both appeals is

AFFIRMED.[2]

---

**2.** We decline to address the issue of whether or not the district court erred in its suggestion that there is a jury question as to whether Mutual was put on notice as to the results of the July, 1987 medical examinations by the mere fact that Bennett disclosed on the previously issued disability policy application the fact that there had been a physical examination in July, 1987, with "no adverse findings."