The **PAUL REVERE LIFE INSURANCE COMPANY**, Plaintiff,

v.

**Ronald A. FISH, Defendant.**

**C.A. No. 94–0209L.**

United States District Court,
D. Rhode Island.

Jan. 9, 1996.

Jeffrey C. Schreck, Brown, Rudnick, Freed & Gesmer, Providence, RI, for Plaintiff.

Charles S. Sokoloff, Woonsocket, RI, for Defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is now before the Court on the motion of plaintiff, Paul Revere Life Insurance Company ("Paul Revere"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff seeks, inter alia, a declaratory judgment allowing it to rescind a disability insurance policy it issued to defendant, Ronald A. Fish ("Fish"), on the ground that defendant made material misrepresentations in his application for insurance. Defendant argues that plaintiff is estopped from rescinding his policy, since the misrepresentations were made by plaintiff's agent who had knowledge of their falsity. Defendant also denies the materiality of the misrepresentations in his application. Defendant has counterclaimed for monetary relief on the basis of plaintiff's alleged "bad faith" refusal to honor his claim under the insurance policy in violation of R.I.Gen.Laws § 9-1-33. Plaintiff now seeks summary judgment on its declaratory judgment claim and defendant's counterclaim. For the reasons that follow, plaintiff's motion for summary judgment is denied in toto.

## I. Facts

Although there are relatively few undisputed facts in this case, the parties appear to agree on the following narrative. On March 27, 1992, Fish, a forty-six year old resident of Rhode Island, prepared an application for disability insurance with Paul Revere, a Massachusetts insurance company. Lawrence M. Halperin ("Halperin"), a licensed Rhode Island insurance broker and long time acquaintance of Fish, assisted Fish in the preparation of his application.

The application consisted of a series of questions about the applicant, including questions about his financial status and medical history. Handwritten answers were provided for all of the questions. The application also contained the following declaration:

> I have read the statements and answers recorded above. They are, to the best of my knowledge and belief, true and complete and correctly recorded. They will become part of this Application and the basis for any policy issued on it.

Below this statement Fish placed his signature. Halperin also signed the application. The following statement preceded his signature: "I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured."

On March 27, 1992, Halperin submitted the application to Paul Revere. Paul Revere approved the application, and a disability insurance policy was issued to Fish as of March 27, 1992.

Under Paul Revere's policy, Fish would receive a monthly benefit of $13,000 for each month of "Total Disability". "Total Disability" was defined as the policy holder being unable to perform the important duties of his occupation due to injury or sickness. Benefits would begin 91 days from the date of the disabling occurrence, and would continue up to a maximum of five years. Fish was required to pay $4,520.90 annually in premiums for this coverage. The policy provided for a contestability period of two years, and the application was incorporated into the insurance contract between the parties.

On August 2, 1993, Fish submitted a claim for disability benefits to Paul Revere on the policy. In the process of investigating Fish's claim, Paul Revere discovered several inaccuracies in Fish's application. On the basis of these alleged misrepresentations Paul Revere rejected Fish's claim.

Paul Revere contends that Fish made the following misrepresentations in his insurance application. Question 8 of the application asked, "[h]ave you ever used stimulants, hallucinogens, narcotics or any controlled substance other than prescribed by a physician, or been counseled or treated for excess use of alcohol or drugs?" The box indicating "no" had been checked. In his deposition, however, Fish admitted that he used cocaine twice a day, consuming approximately one gram per week, between 1980 and the beginning of 1986. Fish also stated that he used one-half an ounce of marijuana per month from 1985 to 1992, and that he used a negligible amount in 1993. Finally, Fish professed that he imbibed several alcoholic beverages a day during the 1980s.

Question 6 of the application asked: "[h]ave you ever been treated for or had any known indication of . . . mental or emotional disorder." A negative reply was given. Fish stated in his deposition, however, that he had seen a counselor prior to March 1992, to deal with personal issues including his depression. Fish was, in fact, taking an antidepressant prescribed by a psychiatrist for some period prior to March 1992.

Paul Revere contends that Fish's application thus omitted information that was important in its assessment of Fish's insurance risk. Claiming that these misrepresentations were material, Paul Revere brought this declaratory judgment action pursuant to 28 U.S.C. § 2201, seeking rescission of the insurance policy.

In order to demonstrate the materiality of these misrepresentations, Paul Revere has submitted an affidavit by one of its underwriters who stated that in his opinion Paul Revere would have rejected Fish's application for disability insurance, if Fish had disclosed his history of substance abuse and depression. In support of his opinion, the underwriter referred to underwriting guidelines that were in place during March 1992.

Paul Revere's underwriting guidelines described generally the negative effects of substance abuse, and the increased risk that may arise from their use. The guidelines included various underwriting considerations, underwriting requirements, and underwriting action charts for each type of substance abuse. The underwriting action charts outlined the course of action that should be taken with respect to potential applicants with histories of substance abuse. The charts' results were contingent upon, among other things, the substance used, the frequency of use, and the date of most recent use.

According to Paul Revere's underwriter, the guidelines required that an individual with Fish's history of substance abuse be declined disability insurance. In particular, he observed that the underwriting action chart for cocaine stated that all non-experimental users should be declined coverage in all cases. Fish was clearly involved in more than "experimental use," defined by the guidelines as using cocaine once or twice. Likewise, the underwriting action chart for marijuana stated that applicants who used moderate to heavy amounts, i.e., more than four times per month, within the three years prior to applying should be declined coverage. Fish admits to using one-half an ounce of marijuana per month up to 1992.

Paul Revere has also submitted an affidavit by Halperin in which he described his role in assisting Fish with the preparation of Paul Revere's application. Halperin stated that he asked Fish the various questions on the application and filled out the application based on the answers provided by Fish. He then presented the application to Fish who reviewed and signed it. Halperin stated that Fish never admitted his history of substance abuse and depression to him, and that had he known this information, he would have advised Fish not to submit his application.

Fish's version of the events of March 27, 1992, is dramatically different. According to Fish's deposition testimony, Halperin never asked Fish any questions regarding his medical history in the process of completing the insurance application. Rather, Halperin presented Fish with a blank application which Fish signed. Fish contends that the application was subsequently filled out by Halperin.

Although Fish does not deny the presence of misrepresentations in his application, he argues that he is not legally responsible for them, since they were made by Halperin. Fish contends that Halperin was an agent of Paul Revere, and that Halperin knew of Fish's substance abuse at the time Halperin completed the application. Therefore, Fish alleges that Paul Revere is estopped from denying coverage, since the misrepresentations were made by its agent who had knowledge of their falsity.

To support his claim that Halperin was Paul Revere's agent, or that he acted with apparent authority, Fish has submitted a business proposal describing Paul Revere's insurance policy that he received from Halperin. The proposal states that it was prepared by Halperin, and it bears Paul Revere's name on the cover page and on the footer of all subsequent pages. Although it

states that it was prepared by Halperin, its language seems to indicate that it had been drafted by an employee of Paul Revere.[1]

Fish also denies that the misrepresentations in his application were material. Therefore, Fish argues that he did not make a material misrepresentation in his application for insurance with Paul Revere. Consequently, Fish contends that Paul Revere is obligated to honor the insurance policy, and he has filed a counterclaim against Paul Revere under R.I.Gen.Laws § 9–1–33 for its alleged "bad faith" in failing to pay his claim.

Paul Revere responds that Halperin was not its agent, and argues that he was, in fact, Fish's agent. It also disputes the contention that Halperin acted with apparent authority as an agent of Paul Revere. In support of its position, Paul Revere relies on Halperin's affidavit, in which he stated that he had relationships with several disability insurance carriers, and that he had sold Fish insurance from other companies prior to March 27, 1992. Therefore, Paul Revere moves for summary judgment on its declaratory judgment action and on defendant's counterclaim. After hearing oral arguments on plaintiff's motion, the Court took this matter under advisement. It is now in order for decision.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2725, at 104 (1983)). Therefore, the test under Rule 56 is "a fairly rigorous one." *Greenburg,* 835 F.2d at 934. In this case, it proves to be fatal to plaintiff's motion.

## III. Analysis

Both parties agree that Rhode Island law controls this diversity action. Paul Revere argues that Rhode Island law allows it to rescind the insurance policy because Fish made material misrepresentations in his application for insurance coverage. According to Paul Revere, Fish's failure to admit in his insurance application that he was at one time a heavy user of cocaine, marijuana, and alcohol, and that he previously suffered from depression constituted material misrepresentations as a matter of law. Therefore, Paul Revere contends that summary judgment is appropriate.

---

1. For example, the first sentence in the proposal reads: "[t]hank you for your interest in disability income protection from The Paul Revere Life Insurance Company, a recognized leader in quality individual noncancellable disability coverage."

Fish responds that Halperin, Paul Revere's agent, made the misrepresentations in the application, and that, in any event, these inaccuracies were immaterial. Thus, Fish argues that the questions of agency and materiality are factual determinations that cannot be decided at the summary judgment stage.

■ Under Rhode Island law, a material misrepresentation in an insurance application, even though innocently made, is a basis for rescinding an insurance contract issued upon the application. *Evora v. Henry,* 559 A.2d 1038, 1040 (R.I.1989); *Guardian Life Ins. Co. of Am. v. Tillinghast,* 512 A.2d 855, 859 (R.I.1986).

The Rhode Island legislature has specifically addressed material misrepresentations in accident and sickness insurance policies:

> The falsity of any statement in the application for any policy covered by this chapter may not bar the right to recovery thereunder unless the false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. R.I.Gen.Laws § 27–18–16 (1994).

Therefore, under R.I.Gen.Laws § 27–18–16, Paul Revere must prove that Fish made a false statement in his disability insurance application, and that the false statement materially affected either the acceptance of the risk by Paul Revere or the hazard assumed by it.

The threshold inquiry is whether Fish misrepresented information in his insurance application. Based on Fish's deposition testimony about his drug and alcohol abuse, it is clear that Fish's application contained false statements. The question is whether Fish is legally responsible for these misstatements.

Paul Revere argues that Fish is responsible for the misrepresentations, since they were recorded by either Fish or Halperin, Fish's agent. Assuming that Fish had, in fact, signed a blank application, Paul Revere contends that Fish is still responsible for the misstatements. Fish argues that because Halperin, Paul Revere's agent, completed the application, he did not personally make any false statements in his application. Consequently, Fish contends that Paul Revere's agent knowingly inserted false answers in the application, thereby estopping Paul Revere from rescinding the policy.

■ Under Rhode Island law, "notice to an agent is notice to his principal as to matters within the actual or apparent scope of the agent's authority." *American Underwriting Corp. v. Rhode Island Hosp. Trust Co.,* 111 R.I. 415, 303 A.2d 121, 125 (1973); *see Restatement (Second) of Agency* §§ 9(3), 268(1)(c) (1957). Notice may be actual or constructive. *See Restatement (Second) of Agency* § 9(3) (1957); 7 G. Couch, *Couch on Insurance* § 26:146, at 801 (2d ed. 1985). Similarly, the actual or constructive knowledge of an insurer's agent is imputed to the insurer with respect to material facts affecting an insured's level of risk, including knowledge of facts relating to an insured's medical history. *See* 7 G. Couch, *Couch on Insurance* §§ 26:133, at 763–64, 26:162, at 830 (2d ed. 1985). Therefore, an insurer is estopped from rescinding a policy due to a material misrepresentation, if the insurer or its agent knew the application contained the misstatement. *See Id.* § 26:133, at 763–69.

Therefore, in order for Paul Revere to be estopped from claiming that Fish made misstatements in his insurance application, Fish must prove that Halperin was an agent of Paul Revere, or that he possessed apparent authority, and that he had actual or constructive knowledge of Fish's history of substance abuse and depression at the time he completed Fish's application.

■ This Court holds that a genuine issue exists as to Halperin's agency and his knowledge at the time of application. " '[T]he existence and scope of an agency relationship is essentially a factual determination,' and is within the province of the jury." *Calenda v. Allstate Ins. Co.,* 518 A.2d 624, 628 (R.I.1986) (quoting *Petrone v. Davis,* 118 R.I. 261, 373 A.2d 485, 487 (1977)); *see also Etheridge v. Atlantic Mut. Ins. Co.,* 480 A.2d 1341, 1346 (R.I.1984); *American Underwriting Corp.,* 303 A.2d at 124. Likewise, the determination of whether one acted with apparent authority is factual in nature. *Calenda,* 518 A.2d at 628; *American Title Ins.*

*Co. v. East West Fin.*, 16 F.3d 449, 454 (1st Cir.1994).

■ In order for Fish to prove at trial that Paul Revere should be estopped from rescinding his insurance contract, he will have to demonstrate that Halperin was more than an insurance broker. Under Rhode Island law, "it is well settled that an insurance agent who is empowered merely to solicit or accept applications for insurance is the agent of the applicant and not the agent of the company." *Ferla v. Commercial Casualty Ins. Co.*, 74 R.I. 190, 59 A.2d 714, 716 (1948); *see also Etheridge*, 480 A.2d at 1346.

■ Under Rhode Island law, however, in the absence of an actual understanding between an agent and a principal, agency can be based on apparent authority. *See Menard & Co. Masonry Bldg. Contractors v. Marshall Bldg. Sys., Inc.*, 539 A.2d 523, 526 (R.I.1988). "An agent's apparent authority to contract on behalf of his principal arises from the principal's manifestation of such authority to the party with whom the agent contracts." *Id.* "The principal must act in a way that leads a third party to believe that the agent is authorized to act on the principal's behalf," and the third party's belief must be reasonable. *Commercial Assoc. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1099 (1st Cir.1993).

■ The manifestations of apparent authority by the principal to the third party do not have to involve direct communications between these parties; "[t]he information received by the third person may come from other indicia of authority given by the principal to the agent." *Menard & Co. Masonry Bldg. Contractors*, 539 A.2d at 526.

In the present case, there is sufficient evidence from which a reasonable jury could determine that Halperin acted with apparent authority as Paul Revere's agent, and that Halperin knew of Fish's problems with drugs, alcohol, and depression. Fish has submitted a copy of the proposal he received from Halperin which states that it was prepared by Halperin, but it bears Paul Revere's name on the footer of each page. Similarly, the language of this proposal clearly indicates that it was written by someone who works for Paul Revere. Since Paul Revere has made no showing that this proposal was composed solely by Halperin, unbeknownst to Paul Revere, it is reasonable to infer that Paul Revere was privy to the creation of the proposal. Therefore, this proposal could reasonably be seen as indicia of authority given by Paul Revere to Halperin, which was reasonably relied on by Fish.

Similarly, one could reasonably infer that Halperin had actual or constructive knowledge of Fish's substance abuse and depression. Halperin stated in his affidavit that he had known Fish for about twenty years as of 1992. In his deposition, Fish testified that as of 1992 he had known Halperin for about twenty years on both a social and professional basis. Fish stated that at one time they played tennis and had dinner together once a week. Although he was unsure if Halperin had actual knowledge of his marijuana and cocaine use, Fish stated that Halperin knew he liked to drink. On the basis of this testimony, one could reasonably infer that Halperin had actual or constructive knowledge of Fish's substance abuse problems.

Paul Revere argues that even if Fish did sign a blank application, he would not be absolved from liability for the misstatements it contained. In support of this argument, Paul Revere relies on several cases under Massachusetts law, including *Sullivan v. Manhattan Life Ins. Co. of New York*, 626 F.2d 1080, 1082–83 (1st Cir.1980), which held that an insured cannot escape liability for misrepresentations by simply arguing that he signed a blank application. Rather, the insured owed the insurer a substantial degree of good faith. *Id.* at 1082. The *Sullivan* case, however, can be factually distinguished from the present case in which the argument has been made that the agent of the insurer completed a blank application incorrectly, although he possessed knowledge of the correct answers.

Therefore, this Court holds that genuine issues exist as to whether Halperin acted with apparent authority as an agent of Paul Revere, and whether Halperin knew of Fish's history of substance abuse and depression when he completed his application. However, even if this Court were to assume that

Halperin was not Paul Revere's agent, plaintiff's motion for summary judgment must fail for another reason. Paul Revere is unable to show at this point that the misrepresentations present in Fish's insurance application were material, as defined by R.I.Gen.Laws § 27–18–16, as a matter of law.

[10] As Paul Revere concedes, the materiality of a misrepresentation by an insured in an insurance application is normally a question of fact. *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 377 (1st Cir.1991); 7 G. Couch, *Couch on Insurance* § 35:93, at 152 (2d ed. 1985). R.I.Gen.Laws § 27–18–16 requires the factual determination of whether Fish's false statement materially affected either the acceptance of the risk or the hazard assumed by Paul Revere before rescission is available. In most cases, including the case before this Court, this factual inquiry should be reserved for the trier of fact.[2]

■ Paul Revere argues, however, that materiality can be decided as a matter of law when materiality is clearly and obviously demonstrated, such that no reasonable fact finder could determine otherwise. Unable to locate Rhode Island law on this proposition, Paul Revere relies on case law from several other jurisdictions. Paul Revere contends that Fish's history of substance abuse and depression fall within this category of information.

Paul Revere offers the following evidence of materiality as a matter of law. First, it argues that materiality is demonstrated by the fact that the insurance application explicitly asked for the omitted information. Second, it relies on the underwriter's affidavit and underwriting guidelines which demonstrate that Fish would not have received coverage if he had disclosed the truth in his application. Third, it contends that Fish demonstrated the materiality of this information by disclosing it to his personal physician in the mid–1980s because he felt it was relevant to his health. Finally, Paul Revere argues that this information is material as a matter of common sense.

This Court agrees with those jurisdictions, applying statutes similar to R.I.Gen.Laws § 27–18–16, which have held that although the materiality of a misrepresentation in an insurance application is generally a question of fact, certain information materially affects the insurer's acceptance of the risk as a matter of law. *See, e.g., Bennett v. Mutual of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir.1992); *McLean Hosp. Corp. v. Lasher*, 819 F.Supp. 110, 131 (D.Mass.1993); *Buck v. American States Life Ins. Co.*, 723 F.Supp. 155, 161 (E.D.Mo.1989). Rhode Island courts, however, have not considered the question of what information, if any, under R.I.Gen.Laws § 27–18–16, is material to an insurer's acceptance of the risk as a matter of law.[3] Therefore, this case presents a question of first impression for this jurisdiction.

■ Although this Court accepts the proposition that some information can be so clearly relevant to an insurer's acceptance of the risk that it is material as a matter of law, the omitted information in this case does not rise to that level. In making this determination, this Court looks to the law of Massachusetts which has a similar statutory scheme and well-developed cannon of law on the materiality of information in insurance applications. Consequently, it is useful in interpreting R.I.Gen.Laws § 27–18–16.

The applicable statute in Massachusetts reads as follows:

A jury determination on the issue of materiality in the context of accident and sickness insurance policies, however, is not expressly mandated by the applicable statute. *See* R.I.Gen.Laws § 27–18–16 (1994).

---

**2.** Interestingly, the question of whether a misrepresentation in a life insurance policy is material has been statutorily reserved for the jury.

No misstatement made in procuring a policy of life insurance shall be deemed material or render the policy void unless the matter thus represented shall have actually contributed to the contingency or event on which the policy is to become due and payable. Whether the matter so represented contributed to that contingency or event, in any case, shall be a question for the jury. R.I.Gen.Laws § 27–4–10 (1994).

**3.** In the case of life insurance policies, however, it has been statutorily mandated that the materiality of misstatements is a question for the jury. *See* R.I.Gen.Laws § 27–4–10 (1994).

No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss. Mass.Gen.L., ch. 175, § 186 (1987).

Therefore, like R.I.Gen.Laws § 27–18–16, the Massachusetts statute allows an insurer to avoid a policy because of a misrepresentation by the insured that increases the risk accepted by the insurer. Unlike Rhode Island, however, substantial case law has developed in Massachusetts interpreting the question of when the insurer's risk is increased as a matter of law.

Under Massachusetts law, whether a misrepresentation is material in increasing the insurer's risk of loss is generally a question of fact. *Davidson v. Massachusetts Casualty Ins. Co.*, 325 Mass. 115, 89 N.E.2d 201, 204 (1949). Certain conditions and diseases, however, are of "such a nature as to require the conclusion as a matter of law that a misrepresentation increased the risk of loss." *Schiller v. Metropolitan Life Ins. Co.*, 295 Mass. 169, 3 N.E.2d 384, 388 (1936). The conditions and diseases that legally increase an insurer's risk include alcoholism, cancer, consumption, and a significant misrepresentation of the insured's age. *See Id.* The following conditions, however, have been held not to increase the risk as a matter of law: rupture, diabetes, kidney ailments, Bright's disease, angina pectoris, sarcoma, and minor heart disease. *See Id.*

*McLean Hosp. Corp. v. Lasher*, 819 F.Supp. 110 (D.Mass.1993), provides the best analogue under Massachusetts law to the case before this Court. In *McLean* the Court addressed the question of whether an insurer, on a motion for summary judgment, could avoid a policy due to the insured's failure to disclose that he had been treated on an inpatient basis for drug abuse four years prior to applying for health insurance. In *McLean,* the insured had responded negatively to specific questions in the application about drug abuse and prior hospitalization,

and had declared that his answers were true and complete. *Id.* at 129–30. The insured's claim on this policy derived from his subsequent hospitalization for drug abuse and mental illness.

After surveying the well-developed precedent, the *McLean* Court held that the issue of whether this information increased the insurer's risk was one for the fact finder, and that summary judgment was inappropriate. *Id.* at 131–33. Although Massachusetts courts had held alcoholism to legally increase an insurer's risk, *see Langdeau v. John Hancock Mut. Life Ins. Co.*, 194 Mass. 56, 80 N.E. 452, 454 (1907), the *McLean* Court felt that those cases were distinguishable in that they involved applicants who were alcoholics at the time of application. *McLean,* 819 F.Supp. at 131–32. In *McLean,* the insured's drug abuse was not shown to be ongoing at the time of application. Therefore, the Court held that historical drug abuse and hospitalization for drug abuse did not fall within those conditions which increased an insurer's risk as a matter of law. *Id.*

Similarly, this Court holds that Fish's previous cocaine, marijuana, and alcohol abuse, and his history of depression is not the type of information that would be considered by all reasonable fact finders as affecting the insurer's acceptance of the risk. Therefore, there is no reason in this case for the Court to depart from the general rule that the question of materiality should be reserved for the trier of fact. *See Borden,* 935 F.2d at 377; 7 G. Couch, *Couch on Insurance* § 35:93, at 152 (2d ed. 1985).

■ This Court holds that a genuine dispute exists as to whether the misrepresentations in Fish's applications did, in fact, affect Paul Revere's acceptance of the risk. Drawing all reasonable inferences in favor of Fish, the record does not demonstrate that Paul Revere would have treated Fish's application differently had it known of his prior substance abuse and depression. There has been no showing that Fish was engaged in substance abuse at the time he applied for disability insurance with Paul Revere. Similarly, it has not been shown that he was suffering from depression in March 1992.

At the time of application, Fish had been employed for twenty-three years as chief executive officer of a wholly-owned corporation at a substantial income. Since financial and employment stability were expressly listed in Paul Revere's underwriting guidelines as favorable underwriting considerations, Fish's financial success may have led Paul Revere to overlook his previous substance abuse and depression.

Likewise, Fish had disclosed in response to specific questions in Paul Revere's application that he engaged in scuba diving, and had experienced arthritis. Nonetheless, although these factors had the potential to increase the risk in Fish's case, Paul Revere issued a disability insurance policy. One could reasonably infer that they would have similarly overlooked his history of substance abuse and depression.

■ Although the underwriter's affidavit and the underwriting guidelines may prove helpful or even determinative at trial in assessing Paul Revere's acceptance of the risk, a genuine issue exists now as to whether this evidence establishes an increased risk. As several other courts have observed, self serving declarations of materiality by an underwriter are not always conclusive. *See Romein v. Massachusetts Gen. Life Ins. Co.,* No. 91–C3627, 1992 WL 309576, at *4 (N.D.Ill. Oct. 22, 1992); *Bennett,* 976 F.2d at 661; *Mayflower Ins. Exch. v. Gilmont,* 280 F.2d 13, 17–18 (9th Cir.1960). Insurer's should not be allowed "to play 'Monday morning quarterback,' potentially voiding all policies that prove to have been bad gambles for them." *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 567 (11th Cir.1990) (quoting *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 674 F.Supp. 354, 358–59 (D.D.C.1987)). Therefore, the credibility of the underwriter's conclusions must be resolved by the trier of fact.

As for Paul Revere's underwriting guidelines on substance abuse, it has not been demonstrated that they were strictly applied under all circumstances. Absent such proof, one can reasonably infer that Paul Revere may waive the guidelines in some cases. This seems a distinct possibility given Fish's employment history and financial means.

Again, this presents an issue for the trier of fact.

■ Therefore, this Court holds that genuine issues exist as to Halperin's agency and the materiality of the misstatements in Fish's application that make summary judgment inappropriate on Paul Revere's declaratory judgment claim. Similarly, these questions of fact prohibit summary judgment in favor of Paul Revere on Fish's counterclaim for insurance company "bad faith" under R.I.Gen.Laws § 9–1–33. A determination on the question of bad faith cannot be made until the issue of whether the insurer breached its obligation under the insurance contract has first been considered. *See Rumford Property and Liab. Ins. Co. v. Carbone,* 590 A.2d 398, 400 (R.I.1991); *Bartlett v. John Hancock Mut. Life Ins. Co.,* 538 A.2d 997, 1000 (R.I.1988). Likewise, under the statute, "the question of whether or not an insurer has acted in bad faith in refusing to settle a claim shall be a question to be determined by the trier of fact." R.I.Gen.Laws § 9–1–33 (1985). Therefore, Fish's counterclaim cannot be resolved by summary judgment.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment on its declaratory judgment claim and on defendant's counterclaim is denied.

It is so ordered.